In re Amos Carlton JACKSON, Jr., Martha Ann Mayfield, Willie Clarence and Karen Wyatt Glass, Valdimy and Likencia Aritus Antoine, and Tommy Wayne Smith, Debtors.

Nos. 10–42730–pwb, 10–42991–pwb, 10–43338–pwb, 10–43824–pwb, 10–43030–pwb.

United States Bankruptcy Court,
N.D. Georgia,
Rome Division.

Jan. 6, 2011.

Terry Haygood, Law Offices of Terry Haygood, Rome, GA, for Amos Carlton Jackson, Jr.

## ORDER WITH REGARD TO PLAN PROVISIONS DEALING WITH CLAIMS SECURED BY PRINCIPAL RESIDENCE

PAUL W. BONAPFEL, Bankruptcy Judge.

Each of these Chapter 13 cases involves a claim arising from a long-term debt secured only by a deed to secure debt on a principal residence, sometimes re-

ferred to colloquially as a "mortgage."[1] Each plan proposes, as 11 U.S.C. § 1322(b)(5) permits, to cure defaults and to maintain regular monthly payments on the claim while the case is pending. In accordance with the usual practice in this District, the plans provide for the Chapter 13 trustee to make payments to cure defaults from plan payments that the debtors make to the trustee and for the debtors to pay the regular postpetition payments to the lenders directly. The purpose of such provisions is to permit a debtor to retain her residence, bring her mortgage debt current during the course of the Chapter 13 case, and exit Chapter 13 with a mortgage debt whose maturity is reinstated and on which no defaults exist.

In addition to the "cure and maintenance" provisions that are in the form plan, each plan in these cases includes nonstandard provisions that impose "an affirmative duty on the holder and/or servicer of a claim secured by Debtor's principal residence" with regard to several matters.[2] Specifically, the nonstandard provisions:

(1) require the lender to apply payments received from the Trustee to the prepetition arrearage;

(2) prohibit the lender from imposing late payment charges based solely on prepetition defaults;

(3) require the lender to apply postpetition monthly payments made by the debtor to the next postpetition payment due;

(4) require the lender to notify the debtor and the debtor's attorney of any changes in the interest rate not less than 60 days in advance;

(5) require the lender to notify the debtor and the debtor's attorney in writing of any change in property taxes or insurance premiums that would change the escrow portion of monthly mortgage payments not less than 60 days in advance;

(6) permit the debtor to file, and serve on the lender, a "Request for Annual Statement" and require the lender to respond to it by filing with the Court, and serving on the debtor, the debtor's attorney, and the trustee, an Annual Statement that (i) itemizes in detail the amounts paid by the debtor during the preceding year that were applied to the principal balance, interest, the debtor's escrow account, and the prepetition arrearage claim, (ii) states the remaining balance of the prepetition arrearage claim; and (iii) states and explains all fees and charges alleged to have accrued postpetition;

(7) permit the debtor to file a motion for contempt, and for the Court to impose sanctions, if the lender fails to file and serve an Annual Statement in response to the debtor's request; and

(8) state that, if the debtor pays the cure amount specified in the plan or in the lender's allowed proof of claim, while timely making all required postpetition

---

1. Under Georgia law, a creditor may acquire an interest in real estate to secure a debt either through a mortgage, which creates only a lien on the real property, or a deed to secure debt (sometimes referred to as a security deed), which transfers legal title. For a variety of reasons, lenders typically require a deed secure debt. *See generally* Daniel F. Hinkel, 2 PINDAR'S GEORGIA REAL ESTATE LAW AND PROCEDURE §§ 20–1—20–3 (6th ed. 2004).

2. The provisions in question in each case are as follows: Amos Carlton Jackson, Jr., No. 10–42730, Amended Plan § 10(F) [15]; Martha Ann Mayfield, No. 10–42991, Amended Plan § 10(E) [16]; Willie Clarence and Karen Wyatt Glass, No. 10–43338, Amended Plan § 10(E) [18]; Valdimy and Likencia Aritus Antoine, No. 10–43824, Plan § 10(E) [8]; Tommy Wayne Smith, No. 10–43030, Amended Plan § 10(E) [23].

payments, the mortgage claim will, at the conclusion of the plan, be reinstated according to its original terms, "extinguishing any rights of lender to recover any amount alleged to have arisen prior to the petition date."

Counsel for the debtors in these cases has explained that the nonstandard provisions are necessary in order to insure that the debtors know what they must pay to complete the plan so that they can exit their Chapter 13 cases with a fully cured and reinstated mortgage and so that they do not face demands from a mortgage lender for fees or charges that the lender did not assert or disclose while the case was pending or that arise from a lender's erroneous accounting for or improper application of payments.

The problem is a legitimate one. Reported cases and legal commentary provide numerous examples of debtors who have encountered such difficulties, as the Committee on Rules of Practice and Procedure of the Judicial Conference of the United States (the "Rules Committee") and the Advisory Committee on Bankruptcy Rules (the "Advisory Committee") recognized in proposing an amendment to the Federal Rules of Bankruptcy Procedure to address the problem. *See Report of the Judicial Conference Committee on Rules of Practice and Procedure* 12–13 (September 2010); *Report of the Advisory Committee on Bankruptcy Rules* 12–14 (May 27, 2010, revised June 14, 2010).[3]

Proposed Rule 3002.1 requires a mortgage lender to notify a debtor of changes in the amount of the mortgage payment and provides a mechanism for the determination of whether a debtor has cured mortgage defaults and is otherwise current on the mortgage when the chapter 13 case is closed.[4] The Judicial Conference has approved proposed Rule 3002.1. If the Supreme Court of the United States approves it and Congressional review does not result in any changes, the new rule may become effective on December 1, 2011.

In the meantime, some courts have addressed the problem with local rules or generally applicable orders that have the effect of imposing requirements similar to some of those the debtors propose in their plans or by confirming plans that include such provisions; the rationale is that the provisions are procedural in nature and do not effect an impermissible modification of a mortgage lender's claim in violation of § 1322(b)(2).[5] This District has not adopted any such requirements, and the form plan does not contain such provisions.

■ The inclusion of nonstandard provisions in a Chapter 13 plan raises two primary concerns. First, the Court has the obligation to deny confirmation of a plan that does not comply with the confirmation requirements of 11 U.S.C. § 1325(a), regardless of whether a creditor objects to its treatment or even appears in the case.

---

3. The report of the Rules Committee and the report of the Advisory Committee, which includes a text of proposed Rule 3002.1, are available at:

    http://www.uscourts.gov/RulesAndPolicies/ FederalRulemaking/PublishedRules/Jud ConfReportSept10.aspx (last visited January 3, 2011).

Click on "Report" for the Rules Committee Report and on "Appendix B" for the Advisory Committee Report.

4. *Report of the Advisory Committee on Bankruptcy Rules* 40–48 (May 27, 2010, revised June 14, 2010), note 3 *supra*.

5. *See generally, e.g., In re Herrera,* 422 B.R. 698 (9th Cir. BAP 2010); *In re Watson,* 384 B.R. 697 (Bankr.D.Del.2008); *In re Anderson,* 382 B.R. 496 (Bankr.D.Or.2008); *In re Collins,* 2007 WL 2116416 (Bankr.E.D.Tenn. 2007); *In re Wilson,* 321 B.R. 222 (Bankr. N.D.Ill.2005).

*United Student Aid Funds, Inc. v. Espinosa,* —— U.S. ——, 130 S.Ct. 1367, 1380–81, 176 L.Ed.2d 158 (2010). Consequently, the Court must determine that plan provisions dealing with a claim secured only by a security interest in real property that is the debtor's principal residence do not impermissibly modify the claim in violation of 11 U.S.C. § 1322(b)(2). *See Universal American Mortgage Co. v. Bateman (In re Bateman),* 331 F.3d 821 (11th Cir.2003). Given the tremendous volume of Chapter 13 cases in this District, the Court cannot properly perform its duty if it must regularly review nonstandard plan provisions.

Second, the use of standard provisions facilitates review of plans by the Chapter 13 trustee and creditors. This is a matter of particular concern in the context of mortgage claims such as the ones in these cases. Mortgage lenders with claims in Chapter 13 cases in this District and their attorneys should be able to readily determine the effect of confirmation on their claims and the duties that confirmation imposes on them.

The inclusion of nonstandard provisions in a plan requires the lender and its attorneys to engage in additional legal analysis to determine whether the provisions impermissibly modify their claims in violation of § 1322(b)(2) or impose additional obligations that the form plan does not. Even if the nonstandard provisions are permissible, the lender faces additional burdens and may incur additional legal fees in order to protect its rights, to comply with the nonstandard provisions, and to avoid sanctions or other adverse consequences.

The prospect of additional legal fees for lenders is a systemic concern. If plans in a district commonly contain nonstandard provisions dealing with mortgage claims, mortgage lenders will be required to scrutinize carefully the specific language of every plan to determine whether it has some sort of different provisions that it must either object to or comply with. The predictable result of additional legal work is additional legal fees which lenders will seek to recover from debtors. Debtors who choose not to include additional provisions may nevertheless face increased fees, because their lenders will have to pay their attorneys to determine that the plan does not deviate from the form plan.

■ In this Court's judgment, it is not appropriate to confirm a Chapter 13 plan with nonstandard provisions that impose affirmative duties on a mortgage lender that neither the Bankruptcy Code nor the Federal Rules of Bankruptcy Procedure require. The form plan in this District sufficiently states terms that properly effect "cure and maintenance" treatment of a mortgage claim under § 1322(b)(5) that do not violate the provisions of § 1322(b)(2), and the Bankruptcy Code and the Bankruptcy Rules specify the consequences of confirmation of a plan that contains such provisions.

To the extent that the nonstandard provisions state consequences of confirmation and impose duties on a mortgage lender that already exist under the Code and Rules, the provisions are unnecessary surplusage; to the extent they recite requirements of otherwise applicable nonbankruptcy law, whether arising out of contractual provisions or laws governing consumer credit or real estate practices, they are likewise unnecessary; and to the extent that they change the lender's obligations or go beyond the requirements of the Code and Rules, they impermissibly modify the mortgage claim in violation of § 1322(b)(2) or impose procedural requirements that neither the Bankruptcy Rules nor this Court's local rules and procedures contemplate.

■ For the foregoing reasons, the Court will not confirm the plans with the

nonstandard provisions dealing with mortgage claims.[6] Counsel for the debtors has advised the Court, however, that the debtors desire to modify their plans, which otherwise meet the requirements for confirmation, by deleting any provisions that the Court concludes are not permissible. Upon entry of this Order, therefore, the plans shall be deemed to be modified at the request of the Debtors to eliminate the provisions identified in footnote 2 above. As thus modified, each plan meets the requirements of 11 U.S.C. § 1325. Accordingly, the Court will enter a separate order in each case confirming each plan as thus modified.

**IT IS ORDERED.**

---

**6.** The Court's ruling in these cases does not preclude a debtor from filing an appropriate proceeding for the court to determine that she is current on her mortgage after she completes her payments under the plan, or earlier if appropriate, or from seeking an order directing a lender to provide information about the status of the debtor's account during the case if the debtor cannot obtain it from the lender. It is not necessary for a plan to contain a provision authorizing such a proceeding for the debtor to do so.

Similarly, it is not necessary for a plan to require a mortgage lender to apply payments properly in order for the debtor to have the protections of 11 U.S.C. § 524(i) and to seek sanctions for a lender's violation of those provisions or other legal requirements that govern the proper application of and accounting for payments pursuant to a Chapter 13 plan.